**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **NUTMEG INSURANCE COMPANY,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:04-CV-1762-BF (R)** |
| | § | |
| **EMPLOYERS INSURANCE COMPANY** | § | |
| **OF WAUSAU, and VIRGINIA SURETY** | § | |
| **COMPANY, INC.,** | § | |
| **Defendants.** | § | |

**MEMORANDUM OPINION AND ORDER**

The Joint Motion Submission of the Motions for Summary Judgment of Plaintiff Nutmeg Insurance Company ("Nutmeg"), Defendant Employers Insurance Company of Wausau ("Wausau"), and Defendant Virginia Surety Company Inc. ("Virginia Surety"), filed on October 28, 2005, is before the Court for consideration. The Joint Motion Submission includes the parties' responses to the summary judgment motions and the appendixes.

**Background**

This case involves a dispute between three insurance companies concerning coverage and the relative obligations for defense costs under three different policies of insurance issued to Apartment Investment and Management Company ("AIMCO"). In August 2001, James M. Suggs and Suggs and Associates, P.C., ("Suggs") brought a putative class action against AIMCO and American Blast Fax, Inc.("ABF") in the 162nd District Court of Dallas County, Texas ("the Suggs action"). The Suggs sought damages under the Telephone Consumer Protection Act ("TCPA") for violations of their right to privacy caused by AIMCO's sending numerous uninvited advertising faxes. Nutmeg, which had issued a Miscellaneous Professional Liability Policy to AIMCO, successfully defended AIMCO in the Suggs action. As a result, AIMCO did

not claim any right of indemnity from any of its insurance carriers.  Nutmeg is subrogated to any rights AIMCO may have to recover the defense costs in the Suggs action under the policies issued by Wausau and Virginia Surety.

**The Contentions of the Parties**

Nutmeg seeks summary judgment on the grounds that Wausau and Virginia Surety had a duty to defend AIMCO in the Suggs action.  Nutmeg further contends that the coverage provided by the insurance policies issued to AIMCO by Wausau and Virginia Surety provided primary insurance coverage for the Suggs action.  Nutmeg claims that the coverage in the policy that it issued to AIMCO is in excess of the insurance coverage provided by Wausau and Virginia Surety and does not apply until the limits of the Wausau and Virginia Surety policies have been exhausted.  Nutmeg asserts that Wausau and Virginia Surety breached their insurance contracts with AIMCO by refusing and failing to defend AIMCO in the Suggs action or to pay the defense costs.  Nutmeg seeks to recover from Wausau and Virginia Surety, jointly and severally, the fees and expenses it paid on AIMCO's behalf in the Suggs action, as a result of Wausau and Virginia Surety's alleged breach of contract.  Nutmeg also seeks costs, pre-judgment interest, post-judgment interest, and attorney fees.

Wausau and Virginia Surety have each filed counterclaims for declaratory judgment against Nutmeg and cross-claims for declaratory judgment against each other.  Wausau contends that: (1) it had no duty to defend AIMCO because its policy does not cover the underlying claims, and (2) it did not breach any contract.  Alternatively, Wausau claims the notice provisions and other insurance clauses in the Nutmeg, Virginia Surety, and Wausau policies limit Wausau's obligations to pay for AIMCO's defense in the Suggs action.

Virginia Surety claims that it had no duty to defend AIMCO in the Suggs action. Alternatively, Virginia Surety contends that AIMCO breached its obligation regarding notice and tender, that Virginia Surety has no liability for fees that AIMCO incurred pre-tender, and that the "first publication exclusion" bars any recovery.

**Material Undisputed Facts**

In 2001, the Suggs action was filed against AIMCO, alleging that AIMCO engaged in a mass facsimile advertisement campaign through an outside vendor, ABF, in violation of the putative class members' rights of privacy under the TCPA. Specifically, the Suggs action alleges in pertinent part:

> 15.     The defendant or an affiliate (as the contracts are unclear as to the precise juridical entity who is advertising) entered one or more fax advertising contracts which were to advertise its apartment properties. Through these contracts over 100,000 unsolicited, and therefore unlawful fax ads were sent and received on the defendants' behalves. Each of these contracts was entered with American Blast Fax, Inc. ("ABF").

> * * *

> 19.     It is unlawful to use any telephone facsimile machine, computer, or other device to send any unsolicited advertisement to a telephone facsimile machine under 47 U.S.C. § 227(b)(1)(C) commonly known as the Telephone Consumer Protection Act. The sending of unauthorized facsimiles in violation of this statute has violated and violates the Plaintiffs' right to privacy. Moreover, it unilaterally forces them to incur an expense which they did not request, including but not limited to, the loss of business opportunity and the valuable time and productivity that a business or individual loses in receiving, reading, distributing, circulating, calling, faxing, or writing to the sender to get them to stop and usually trashing the junk fax. Next, this illegal activity deprives the Plaintiffs of the full use of their property.

(App., Vol. 2 at 5-7.) The Suggs action also alleges that the putative class plaintiffs are

individuals or entities that engage in "commercial, professional, or personal matters in the

Dallas/ Fort Worth metropolitan area" and that AIMCO sent unsolicited facsimile

advertisements to the Suggs.  (*Id*. at 3.)  Additionally, the Suggs action alleges that AIMCO

entered into contracts to engage in "two rounds of fax advertising on behalf of itself and its

properties."  (*Id*.)  AIMCO allegedly contracted to send out the first round of mass facsimile

advertisements between October 4, 2000, and December 20, 2000.  (*Id*. at 4.)  Exhibits attached

to and referenced in the Suggs action demonstrate that these dates in 2000 were the dates upon

which AIMCO's first round of facsimile advertisements were scheduled to begin.  (*Id*. at 27-31.)

The Suggs allege that they received AIMCO's facsimiles from this first round of advertising.

(*Id*. at 3.)

 AIMCO allegedly entered into contracts to send out a second round of facsimile

advertisements.  (*Id*. at 4.)  Exhibits attached to and referenced in the Suggs action show that this

second round was scheduled to begin sometime between January 2001 and February 2001.  (*Id*.

at 18-26.)  The Suggs allege that they received AIMCO's facsimiles from the second round of

advertising.  (Id. at 3.)

Wausau issued a Commercial General Liability Insurance Policy ("Wausau Policy") to

AIMCO, under Policy Number 4720-00-000135-06-001, for the Policy Period of June 1, 1999,

through June 1, 2002.  (App., Vol. 1 at W00001.)  The Wausau Policy proves a general

aggregate limit of two million dollars and a limit of one million dollars for claims arising from

"advertising injury."  (*Id*.)

Virginia Surety issued a Commercial General Liability Insurance Policy ("Virginia

Surety Policy") to AIMCO, under Policy Number IPGA 7000000120002, for the Policy Period

of December 31, 2000, through December 31, 2003.  (*Id*. at VSC0547.)  Both the Wausau Policy

and the Virginia Surety Policy contain insuring agreements that set forth certain obligations of

Wausau and Virginia Surety to AIMCO under their respective Policies.  (*Id*. at W00262,

VSC0121.)  The Wausau Policy and the Virginia Surety Policy each contain the following

endorsement covering an "advertising injury:"

> 1.    Insuring Agreement.
>
>> a.    We will pay those sums that the insured becomes legally
>> obligated to pay as damages because of "personal injury"
>> or "advertising injury" to which this insurance applies.  We
>> will have the right and duty to defend the insured against
>> any "suit" seeking those damages. . . .
>
>> b.    This insurance applies to "personal injury" or "advertising
>> injury" only if:
>> (1)    The "personal injury" or "advertising injury" arises
>> out of an offense committed during the policy
>> period.

(*Id*.)   The definition of "advertising injury" in the Wausau Policy is supplied by an endorsement,

which states:

> 1.    "Advertising injury" means injury, other than "bodily injury" or
> "property damage" or "personal injury," arising out of one or more
> of the following offenses committed in the course of "your
> advertising activities:"
>
>> a.    Oral or written publication of material that slanders or
>> libels a person or organization or disparages a person's or
>> organization's goods, products, or services;
>
>> b.    Oral or written publication of material that violates a
>> person's right of privacy;
>
>> c.    Misappropriation of advertising ideas; or
>
>> d.    Infringement of copyright, title or slogan.

(*Id*. at W00263.)  The term "your advertising activities" is further defined by an endorsement to

the Wausau Policy to mean "widespread distribution of material promoting your goods, products

or services."  (*Id*. at W00264.)  Both the Wausau Policy and the Virginia Surety Policy apply

only to "advertising injury" if such injury arises during the Policy Period and is committed in the

"coverage territory," which, in pertinent part, is the United States of America.

The Wausau Policy also provides that, if other valid insurance exists to cover AIMCO for

a loss, the insurance provided by the Wausau Policy is primary, except in the following

specifically enumerated instances:

**4.      Other Insurance.**

If other valid and collectible insurance is available
to the insured for a loss we cover under Coverages
A or B of this Coverage Part, our obligations are
limited as follows:

**a.      Primary Insurance**

This insurance is primary except when b. below
applies.  If this insurance is primary, our obligations
are not affected unless any of the other insurance is
also primary.  Then, we will share with all that
other insurance by the method described in c.
below.
.   .   .

**b.      Excess Insurance**

This insurance is excess over:

(1)      Any of the other insurance, whether primary, excess,
contingent or on any other basis:

(a)      That is Fire, Extended coverage, Builder's Risk,
Installation Risk or similar coverages for "your
work";

6

(b)     That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(c)     If the loss arises out of the maintenance or use of aircraft, "autos", or watercraft to the extent not subject to Exclusion g. of COVERAGE A (SECTION I).

(2)     Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

.   .   .

**c.     Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

(*Id*. at W00018-19, W00071.)

Under the Virginia Surety Policy, the definition of "advertising injury" is supplied by an endorsement, which states:

1.     "Advertising injury" means injury, other than "bodily injury" or "property damage" or "personal injury," arising out of one or more of the following offenses committed in the course of "your advertising activities:"

a.     Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

b.     Oral or written publication of material that violates a person's right of privacy;

7

      c.        Misappropriation of advertising ideas; or

      d.        Infringement of copyright, title or slogan.

(*Id*. at VSC0123.)  The term "your advertising activities" is further defined by an endorsement to the Virginia Surety Policy to mean "widespread distribution of material promoting your goods, products or services."  (*Id*.)

Like the Wausau Policy, the Virginia Surety Policy provides that, if other valid insurance exists to cover AIMCO for a loss, the insurance provided by the Virginia Surety Policy is primary, except in the following specifically enumerated instances:

**4.**    **Other Insurance.**

> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

> **a.**    **Primary Insurance**

> > This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in c. below.

> **b.**    **Excess Insurance**

> This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

> (1)    That is Fire, Extended coverage, Builder's Risk, Installation Risk or similar coverages for "your work";

> (2)    That is Fire Insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3)     If the loss arises out of the maintenance or use of aircraft,
        "autos," or watercraft to the extent not subject to Exclusion
        g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under
Coverages A or B to defend the insured against any "suit" if any
other insurer has a duty to defend the insured against that "suit."  If
no other insurer defends, we will undertake to do so, but we will be
entitled to the insured's rights against all those other insurers.

.   .   .

**c.     Method of Sharing**

If all of the other insurance permits contribution by equal shares,
we will follow this method also.  Under this approach each insurer
contributes equal amounts until it has paid its applicable limit of
insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal
shares, we will contribute by limits.  Under this method, each
insurer's share is based on the ratio of its applicable limit of
insurance to the total applicable limits of insurance of all insurers.

(*Id*. at VSC0081.)

Nutmeg issued Policy Number NPG0150962 ("Nutmeg Policy") to AIMCO. (*Id*. at

Nutmeg 0181.)  The Nutmeg Policy is a Miscellaneous Professional Liability Insurance policy,

for the Policy Period of November 20, 2000, to November 20, 2002 (retroactive date to May 31,

1988).  (*Id*.)  It provides a limit of ten million dollars per claim, which includes Damages and

Claims Expenses.  (*Id*.)  Under its Insuring Agreement, the Nutmeg Policy provides that:

The Company will pay on behalf of the **Insured** all sums in excess of the
Deductible amount stated in the Declarations which the **Insured** shall become
legally obligated to pay as **Damages** and **Claim Expenses** resulting from **Claims**
first made against the **Insured** during the **Policy Period** or **Extended Reporting
Period**, if applicable, as a result of a **Wrongful Act** by the **Insured** or any **Entity**
for whom the **Insured** is legally liable, provided that such **Wrongful Act** was
committed on or after the **Retroactive Date** and before the end of the **Policy
Period**.

(*Id*. at Nutmeg 0182, [Emphasis in original].)  With respect to other insurance, the Nutmeg

Policy provides:

> **(G)    OTHER INSURANCE**
>
> If any **Claim** or **Wrongful Act** noticed to the company under this Policy is insured by another valid policy or policies, then this Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether such other policy or policies are stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written specifically excess of this Policy by reference in such other policy to the Policy Number indicated on this Policy's Declarations.

(*Id*. at Nutmeg 0188, [Emphasis in original].)

AIMCO notified Wausau of the Suggs action on October 25, 2001, and demanded that

Wausau defend AIMCO under the Wausau Policy.  (App., Vol. 2 at 43-45, 62-65, 72.)  Wausau

refused to defend AIMCO, claiming, *inter alia*, that the Suggs action did not allege a covered

"advertising injury."  (*Id*. at 62-65, 160-63.)

On October 2, 2002, AIMCO notified Virginia Surety of the Suggs action and demanded

that it defend AIMCO in the action.  (*Id*. at 78-82.)  Virginia Surety initially denied that it owed

a duty to defend AIMCO in the Suggs action.  (*Id*. at 111-114.)  Later, it acknowledged its duty

to defend AIMCO, stating that "the claims as specifically described and contained in the last

amended Plaintiff's Petition invoke the Virginia Surety Policy's obligation to provide a defense

to the claims."  (*Id*. at 165-55.)  However, in the same letter, Virginia Surety speculated that an

exclusion might apply and reserved its rights under the policy.  (*Id*.)  Virginia Surety did not

provide a defense or contribute to the defense costs.  Virginia Surety did not raise the defense of

late or improper notice.

On November 9, 2001, AIMCO notified Nutmeg of the Suggs action and demanded that

Nutmeg provide a defense.  (*Id*. at 133-38.)  Nutmeg agreed to pay for AIMCO's defense under a full reservation of its rights.  (*Id*. at 139-47.)  Judgment was rendered in AIMCO's favor on January 21, 2005.  (App., Vol. 2 at 183-84.)  Nutmeg incurred attorney fees and expenses in the amount of $918,735 in defending the Suggs action.  (*Id*. at 131; App., Vol. 3 at 228-30.)   The Nutmeg Policy provides as follows with respect to subrogation:

> **(H)    SUBROGATION**
>
> > In the event of any payment under this Policy, [Nutmeg] shall be subrogated to all of the Insured's rights of recovery against any person or organization, and the Insured shall execute and deliver instruments and papers and do whatever else is necessary to preserve and secure such rights.  The Insured shall do nothing to prejudice such rights.

(App., Vol. 1 at Nutmeg 0188.)

## Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A "material fact" is one that "might affect" the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001).  A "genuine" issue is "real and substantial, as opposed to merely formal, pretended, or a sham."  *Bazan*, 246 F.3d at 489.  Accordingly, a genuine issue of material fact is present if the jury could potentially find in the non-moving party's favor.  *Anderson*, 477 U.S. at 248; *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 (5th Cir. 2001).

Once a party has made a proper motion for summary judgment, the court reviews the

record as a whole in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co, Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Time Warner Operation, Inc.*, 98 F.3d 179, 181 (5th Cir. 1996).  The moving party bears the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).

General principles of contract interpretation govern the interpretation of an insurance policy, and issues of insurance policy interpretation are questions of law.  *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 713 (5th Cir. 2002).  A federal court with diversity jurisdiction applies state law when interpreting insurance policies.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Harken Exploration Co.*, 261 F.3d at 471.  The substantive law of Texas applies in this case.  *See Sentry Ins. v. R. J. Weber Co., Inc*., 2 F.3d 554, 556 (5th Cir. 1993).  In diversity actions where state law has been announced by the state's highest court, the state law must be followed.  *Bailey v. Southern Pac. Transp. Co*., 613 F.2d 1385, 1388 (5th Cir. 1980) (citing *Commissioner v. Bosch*, 387 U.S. 456, 465 (1967)).  In the absence of a decision from the state's highest court, intermediate state court decisions must also to be followed, unless the Court is convinced that the highest court would decide otherwise.  *Id*.

The insured bears the burden of demonstrating that a third-party claim is within the coverage of its insurance policy.  *Harken Exploration Co.*, 261 F.3d at 471.  The insurer then bears the burden of illustrating that an exclusion contained within the policy applies.  *Id.*  "If multiple interpretations are reasonable, [the court] must construe the [policy] against the insurer."  *St. Paul Fire & Marine Ins. v. Green Tree Fin. Corp*., 249 F.3d 389, 392 (5th Cir. 2001).

## ANALYSIS

### The TCPA

In 1992, the TCPA became effective. *See* 47 U.S.C. § 227, *et seq.* One of the purposes of the TCPA is to protect the privacy rights of individuals who receive certain types of unsolicited advertisements, including advertisements sent by facsimile. *Western Rim Inv. Advisors, Inc. v. Gulf Ins. Co.*, 269 F. Supp. 836, 846-47 (N.D. Tex. 2003), aff'd 96 Fed. Appx. 960 (5th Cir. 2004)(applying Texas law); *TIG Ins. Co. v. Dallas Basketball, Ltd.*, 129 S.W.3d 232, 238 (Tex. App.– Dallas Feb 25, 2004) (No. 05-03-00134-CV), rehearing overruled (Apr 05, 2004), review denied (2 pets.) (Feb 11, 2005), rehearing of petition for review denied (Aug 22, 2005). The TCPA deems all unsolicited advertising to be an offensive intrusion into the recipient's privacy. *Id.* The TCPA is not a penal statute. *Western Rim*, 269 F. Supp. at 849.

### Duty to Defend

The first issue before the Court is whether Wausau and Virginia Surety had a duty to defend AIMCO in the Suggs action. Under Texas Law, the duty to defend and the duty to indemnify are distinct and separate duties, creating distinct and separate causes of action. *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 821- 22 (Tex. 1997). The duty to defend is broader than the duty to indemnify. *Colony Ins. Co. v. H.R.K., Inc.,* 728 S.W.2d 848, 850 (Tex. App. – Dallas 1987, no writ). The duty to defend is not affected by facts ascertained before suit, by facts developed in the process of the litigation, or by the ultimate outcome of the suit. *Am. Alliance Ins. Co. v. Frito-Lay, Inc.,* 788 S.W.2d 152, 153-54 (Tex. App. – Dallas 1990, writ dism'd).

An insurer's duty to defend "is determined by the allegations of the petition when

13

considered in light of the policy provisions without reference to the truth or falsity of such allegations. " *Argonaut SW Ins. Co. v. Maupin,* 500 S.W.2d 633, 635 (Tex. 1973).  "The duty arises when a third party sues the insured on allegations that, if taken as true, *potentially* state a cause of action within the terms of the policy." *Cont'l Sav. Ass'n v. United States Fid. & Guar. Co.,* 762 F.2d 1239, 1243 (5th Cir.) (emphasis in original), *opinion amended on other grounds,* 768 F.2d 89 (5th Cir. 1985).  Any doubt as to whether the allegations in the petition state a cause of action that falls within the coverage of the policy and that compels an insurer to defend must be resolved in favor of the insured.  *American Nat'l Gen. Ins. Co. v. Ryan*, 274 F.3d 319, 324 (5th Cir. 2001).

Texas follows the "eight corners" rule, which means that when a court examines whether an insurer has a duty to defend, the court only examines the language in the insurance policy and the claims against the insured in the most recent petition to make its determination.  *Harken Exploration Co.*, 261 F.3d at 471.  To determine whether the claim falls within the scope of the insurance policy, the court examines the facts of the claim to determine whether the facts alleged are within the policy's coverage.  *Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Houston Petroleum Co.*, 830 S.W.2d at 155. The reviewing court  must focus on the "factual allegations that show origin of damages rather than on legal theories alleged." *Merchants*, 939 S.W.2d at 1341.  If the complaint alleges one cause of action potentially within the scope of the policy, it triggers the duty to defend, and the insurer must defend against the entire lawsuit.  *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995) *overruled on other grounds by Grapevine Excavation, Inc. v. Maryland Lloyds*, 35 S.W.3d 1, 5 (Tex. 2000); *Green Tree Corp.*, 249 F.3d at 391; *see generally Hillson*

14

*Steel Products v. Wirth Ltd.*, 538 S.W.2d 162, 165-66 (Tex. App. – Hous. [1 Dist.] 1976, no pet. h.) (holding that where documentary exhibits are attached to and made part of the petition, the court has to consider them in determining whether the petition alleges a valid cause of action).

The Court must compare the allegations of the latest underlying complaint in the Suggs action with the language of the advertising injury provisions.[1]  The Suggs complaint alleges that AIMCO violated the TCPA by sending over 100,000 unsolicited unlawful fax ads to fax machines (including those of the Suggs) without obtaining prior consent. Specifically, the Suggs allege that "[t]he sending of unauthorized facsimiles in violation of this statute has violated and violates the Plaintiffs' right to privacy."  Under the Wausau Policy and the Virginia Surety Policy, "personal and advertising injury" includes injury from "[o]ral or written publication of material that violates a person's right of privacy."  The Wausau Policy includes an additional definition that states: "'Your advertising activities' means widespread distribution of material promoting your good, products or services."

The policies do not define the words "publication" or "privacy."  Nevertheless, Wausau and Virginia Surety urge the Court to employ common-law tort definitions of these terms. Specifically, Wausau and Virginia Surety contend that the factual allegations in the Suggs action do not allege an "advertising injury," and therefore, they have no duty to defend.

---

[1]  Nutmeg did not contend for purposes of summary judgment that the Suggs petition triggered the "property damage" coverage of the Wausau Policy and the Virginia Surety Policy. However, Wausau and Virginia Surety each sought summary judgment on the ground that the "property damage"provisions of their respective policies were not triggered.  In its response to the summary judgment motions, Nutmeg states that it does not concede that the "property damage " provisions of the Wausau Policy and the Virginia Surety Policy have not been triggered.  The Court finds that in light of its findings with respect to the "advertising injury" provisions of the policies, the Court need not reach the issue of whether the "property damage" provisions are also triggered.

## Advertising Injury

This Court is *Erie*-Bound to apply Texas law.  *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938); *Harken Exploration Co.*, 261 F.3d at 471.  As noted previously, when the Texas Supreme Court has not spoken on an issue, the examining court must follow intermediate state court decisions -- unless that court is convinced that the highest court would decide otherwise. *Bailey*, 613 F.2d at 1388 (citing *Bosch*, 387 U.S. at 465).   In *TIG Ins. Co. v. Dallas Basketball, Ltd.*, a case that is directly on point, the Texas Court of Appeals holds that an action brought against a party for sending unsolicited advertisements by a telephone facsimile machine alleges injuries that fall within the advertising injury coverage of a commercial general liability policy. *TIG Ins. Co.*, 129 S.W.3d at 238.

This Court is not convinced that the Texas Supreme Court would disagree with the state appellate court in *TIG Insurance Co.*[2]  Wausau and Virginia Surety rely upon cases from the United States Courts of Appeals for the Fourth and Seventh Circuits to support their argument that the type of privacy invasions envisioned by the TCPA's unsolicited fax prohibition are not covered by commercial general liability policies like the policies in question here.  *See Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 639-42 (4th Cir. 2005)(applying Virginia law to an underlying petition, which unlike the Suggs petition, did not even mention the word "privacy") and *Am. States Ins. Co. v. Capital Assoc. of Jackson County, Inc.*, 392 F.3d 939, 941- 43 (7th Cir. 2004) (construing the "advertising injury" provision of an insurance policy

---

[2]  The Court agrees with the United States District Court for the Northern District of Texas in *Registry Dallas Associates, L.P. v. Wausau Business Insurance Company*, 2004 WL 614836 at *4 (N.D. Tex. 2004) that the state appellate court's analysis in *TIG Ins*. is a well-reasoned application of Texas law.

under Illinois law).  *But see Valley Forge Ins. Co. v. Swiderski Elec., Inc.*, 834 N.E.2d 562, 570

(Ill. Ct. App. Aug. 17, 2005) (criticizing the "contextual approach" used in *American States* as not

being the standard governing the judicial construction of an insurance policy under Illinois law).

Wausau and Virginia Surety claim that the Suggs petition does not allege an "advertising injury"

because it does not allege (1) an injury arising from a "publication," or (2) an injury arising from

"material that violates a person's right of privacy." However, the Suggs petition alleges that

"[t]he sending of unauthorized facsimiles in violation of [the TCPA] has violated and violates the

Plaintiffs' right to privacy."

**"Publication"**

Unlike the federal court decisions relied upon by Wausau and Virginia Surety, the Texas

rules of contract construction preclude the Court from limiting the term "publication" in

advertising injury coverage to the publication of material that wrongfully discloses private facts to

third parties.  *TIG Ins. Co.,* 129 S.W.3d at 238.  *See Western Rim,* 269 F. Supp.2d at 846. Rather,

under Texas law, the word "publication" must be given its plain, ordinary, and generally accepted

meaning.  *TIG Ins. Co.,* 129 S.W.3d at 238; *see also Western Rim,* 269 F. Supp. 2d at 846-47

(there is nothing in the policy indicating that the word "publication" necessarily means

communicating the offending material to a third party).  "Publish" generally means "to disclose,

circulate, or prepare and issue printed material for public distribution."  *See State v. Doe*, 61

S.W.3d 99, 102 (Tex. App – Dallas 2001), *aff'd*, 112 S.W.3d 532 (Tex. Crim. App. 2003).  Thus,

contrary to Wausau and Virginia Surety's assertions, the scope of "publication" is not limited  to

offending material sent to a third party.  *See TIG Ins. Co*., 129 S.W.3d at 238; *Western Rim*, 269

F. Supp.2d at 847.  The fact that the Wausau Policy requires "widespread distribution" of material

17

does not limit the scope of "publication" to offending material sent to a third party.  Rather, giving the term "distribution" its plain meaning, the faxing of the unsolicited advertisements to many parties must be considered widespread distribution of advertising material.  The Court finds that the Texas Supreme Court would agree with the state appellate court that the word "publication" would not convey to the average, ordinary, normal, reasonable person an intention to include only the communication of offending material to a third party.

"<u>**Right to Privacy**</u>"

The policies in this case state that "advertising injury" includes an injury arising out of oral or written publication of material that violates a person's right of privacy.  Like the term "publication," the term "right of privacy" is not defined in the Policies and is open to numerous interpretations.  Relying once again on *American States Insurance Co.,* Wausau and Virginia Surety contend that unsolicited faxes involve, at most, the tort of intrusion on "seclusion," while the policy coverage is limited to content-based or "secrecy" interests.  After recognizing that the TCPA protects at least a slight interest in seclusion, the court in *Am. States Ins. Co.* stated that the central question in the case was "whether the policy covers the sort of seclusion interest affected by faxed ads." *Am. States Ins. Co.,* 392 F.3d at 942.  Distinguishing secrecy from seclusion, the court concluded that, while the TCPA condemns a particular means of communicating an advertisement rather than the contents of that advertisement, advertising injury coverage deals with informational content. *Am. States Ins. Co.,* 392 F.3d at 943.  Thus, the policy issued by *Am. States* did not cover the normal consequences of "junk advertising faxes." *Am. States Ins. Co.,* 392 F.3d at 943.

By contrast, the Texas appellate court did not import Texas tort standards to determine the

18

meaning of privacy in commercial liability policies of the kind involved here. *See TIG Ins. Co.*, 129 S.W.3d at 237. Rather, the state appellate court noted that because the TIG Policy did not define "privacy," the court was required to give "privacy" its plain, ordinary, and popular meaning. *Id.* It noted that if the language used in the policy is susceptible to more than one reasonable interpretation, the court must resolve the uncertainty by adopting the construction that most favors the insured. *Id.* According to the state appellate court, the average person would reasonably understand that he or she would be covered under the advertising injury provision of the policy because the transmission of an unwanted facsimile constitutes an intrusion on seclusion, and hence violates one's right of privacy. *Id.* Taking into consideration an insurer's broad duty to defend in Texas and the fact that the insurers who drafted the contracts neither defined privacy nor differentiated between secrecy and seclusion privacy, this Court finds that the Texas Supreme Court would agree with the state appellate court in *TIG Ins. Co.* and find in favor of coverage.[3]

---

[3] Texas law providing that claims alleging violations of the TCPA by transmission of unsolicited facsimiles trigger insurance coverage or other relief that is available for invasions of the right to privacy is consistent with the holdings of federal courts  that have decided this issue based upon the laws of the forum states. *See generally*, *Park Univ. Enters. v. Am. Cas. Co. of Reading,* 314 F. Supp. 2d 1094, 1110 (D. Kan. 2004)  (finding a duty to defend under Kansas law based upon the "advertising injury" provisions of a commercial liability policy where the plaintiffs received unsolicited facsimiles in violation of the TCPA and their right to privacy); *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.,* 300 F. Supp. 2d 888, 895 (E.D. Mo. 2004) (applying Missouri law and finding that insurance coverage is implicated by unsolicited facsimile advertising based upon the invasion of privacy, private nuisance, and interference with possession of personal property provisions of the policies); *Hooters of Augusta, Inc. v. Am. Global Ins. Co.,* 272 F. Supp. 2d 1365, 1373 (S.D. Ga. 2003) (relying on Georgia law and finding that a TCPA violation may constitute an invasion of privacy within the meaning of the "advertising injury" provisions of a commercial liability policy); *Prime TV, LLC v. Travelers Ins. Co.,* 223 F. Supp. 2d 744, 752-53 (M.D. N.C. 2002) (relying on North Carolina law and providing that the "act of faxing DirecTV advertisements to the recipients constitutes 'advertising injury' as defined by the Travelers policies").

Accordingly, the state appellate opinion in *TIG  Ins.  Co.* governs here because the Texas Supreme Court is unlikely to disturb the well-reasoned holdings of the intermediate state court. According to the Suggs petition, AIMCO sent hundreds of thousands of unsolicited facsimile advertisements in the Dallas and Fort Worth metroplex, and those advertisements violated the TCPA and the class plaintiffs' right to privacy.   The Suggs action alleges that an "advertising injury" occurred in the "coverage territory" during the Policy Periods of the Wausau Policy and the Virginia Surety Policy.  The term "widespread distribution," given its plain meaning, includes distribution of advertising material by facsimile machine.  At least one of several claims in the Suggs complaint potentially falls within the scope of coverage.  The Court finds as a matter of law that Wausau has a duty to defend AIMCO under the Wausau Policy.  Likewise, Virginia Surety has a duty to defend AIMCO under the Virginia Surety Policy, unless the "first publication" exclusion bars coverage.

## Virginia Surety's Claimed Exclusion

Virginia Surety argues that any advertising injury coverage is barred by the "first publication" exclusion in the Virginia Surety Policy because the allegations in the Suggs action show that the first publication of AIMCO's offending facsimile advertisements in violation of the TCPA occurred prior to the Virginia Surety Policy Period which began December 31, 2000. Virginia Surety also claims that ABF, as AIMCO's alleged agent, was on notice of TCPA violations before December 2000 because it had received a citation from the Federal Communications Commission ("FCC") in August 2000.

20

A court must construe a policy provision that purports to exclude or limit coverage "more stringently" than other parts of the insurance policy or the factual allegations in the petition or complaint. *Harken*, 261 F.3d at 475 (citing *Barnett v. Aetna Life Ins. Co*., 723 S.W.2d 663, 666 (Tex. 1987)). "In an insurance coverage dispute analyzed under the eight corners rule, '[t]he insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy. Once the insurer has proven that an exclusion applies, the burden shifts back to the insured to show that the claim falls within an exception to the exclusion.'" *Primrose Operating Co. v. Nat'l Am. Ins. Co*., 382 F.3d 546, 552 -553 (5th Cir. 2004) (quoting *Guar. Nat'l Ins. Co. v. Vic Mfg. Co*., 143 F.3d 192, 193 (5th Cir. 1998)).

The Virginia Surety Policy provides:

This Insurance does not apply to:

> "[an] advertising injury"

> > . . .

> > (2) Arising out of the oral or written publication of material whose first publication took place before the beginning of the policy period.

(App. 1, Tab.2, VSC 0122.) Virginia Surety claims that the purpose of the exclusion is to prevent an insured from obtaining coverage for risks already taken and which are known to have been taken. *Matagorda Ventures, Inc. v. Travelers Lloyds Ins. Co.*, 203 F. Supp.2d 704, 716 (S.D. Tex. 2001). However, if some of the advertisements have been published after the beginning of the insured's policy period, then the "first publication" exclusion does not apply. *See, e.g., Everett Assocs. Inc. v. Transcontinental Ins. Co*., 56 F. Supp. 2d 874, 885 (N.D. Cal. 1999 (concluding that the "first publication" exclusion did not prevent coverage where each

advertisement was considered separately and some of the advertisements were published after the commencement of the policy period).

The allegations in the Suggs action do not provide a date when the offending faxes in this case were received. Rather, they assert that they received AIMCO's facsimiles sent from rounds of advertising between: (1) October 4, 2000 and December 20, 2000 and (2) January 2001 and February 2001. (App., Vol. 2 at 3.) The record does not show that the Suggs placed AIMCO, or even ABF, on notice that they had received the offending facsimile in violation of the TCPA. before December 31, 2000. The Suggs allegations support a claim that at least part of the alleged "advertising injury" occurred on or after December 31, 2000. Additionally, the Suggs action allegations support an interpretation that each written publication of material should be treated as a separate and distinct act of violating the Suggs' right to privacy. The Court concludes that Virginia Surety did not meet its burden to show that the "first publication" exclusion applies. Therefore, Virginia Surety has a duty under the Virginia Surety Policy to defend AIMCO in the Suggs action.

## The Relative Obligations of the Three Insurers

Nutmeg contends that the Wausau Policy and the Virginia Surety Policy provide primary coverage for the duty to defend AIMCO in the Suggs action and that since other insurance covers the claims against AIMCO, the other insurance clause in the Nutmeg Policy renders Nutmeg's coverage excess. (Nutmeg Br. at 29-33.) Wausau contends that the costs incurred in defending AIMCO in the underlying Suggs action should be shared on a pro-rata basis between Nutmeg, Virginia Surety, and Wausau because a conflict exists in the "other insurance" clauses. (Wausau Br. at 28.) Virginia Surety contends that the Nutmeg Policy is not excess because the Wausau

Policy and the Virginia Surety Policy do not cover the same kind of claims as the Nutmeg Policy, rendering them something other than "valid claims" under Nutmeg's excess insurance clause. (Virginia Surety Resp. at 25.)  It contends alternatively that each carrier should share pro rata the post-tender defense costs. (*Id.*)

To determine the relative obligations of the three insurers concerning the defense of the Suggs action, the Court must consider the meaning and applicability of the "other insurance" clauses with respect to claims made in the Suggs action.   "Other insurance" clauses only apply when the coverages at issue are "concurrent." *See St. Paul Mercury Ins. Co. v. Lexington Ins. Co.,* 78 F.3d 202, 206 (5th Cir.1996); *CNA Lloyds of Tex. v. St. Paul Ins. Co.,* 902 S.W.2d 657, 659-60 (Tex.App.– Austin 1995, writ dism'd by agr.).  Two or more policies must "generally cover the same property and interest therein against the same risk in favor of the same party" for the policies to be concurrent. *State Farm Fire & Cas. v. Griffin*, 888 S.W.2d 150, 155 (Tex. App. – Hous. [1 Dist.] 1994).

Although the three policies do not provide identical coverage on all potential claims because the Nutmeg Policy is a Professional Liability Policy and the Wausau Policy and the Virginia Surety Policy are General Commercial Insurance Policies, their coverage need not be completely coextensive for them to be considered "other insurance" as to each other. *Am. Cent. Ins. Co. v. Harrison,* 205 S.W.2d 417, 420 (Tex.Civ.App. – Eastland 1947, writ ref'd n.r.e.). The three policies provide coverage to AIMCO for the "advertising injury" alleged in the Suggs action.  Hence, they are "other insurance" with respect to each other, at least for the Suggs action claims, regardless of any additional or different coverages that the policies may provide.

If the "other insurance clauses" conflict, Texas law follows the rule of "dominant

23

consideration" of the rights of the insured.  *Hardware Dealers Mut. Fire Ins. Co. v. Farmers Ins.*

*Exch.*, 444 S.W.2d 583, 590 (Tex. 1969).  Under the "dominant consideration" rule, if a conflict

would cause a gap in the coverage for the insured, the policies must be prorated.  *Id.*; *St. Paul*

*Mercury*, 78 F.3d at 210.  However, if the terms of an insurance policy are clear and

unambiguous, a court may not vary the policy's terms.  *Canutillo Indep. Sch. Dist. v. Nat'l Union*

*Fire Ins. Co*., 99 F.3d 696, 700 (5th Cir. 1996).  In this case, *Hardware Dealers* is not applicable

because the other insurance clauses do not conflict and are not mutually exclusive.  Application

of the other insurance clauses in the three policies does not provide a gap in insurance for

AIMCO.

Wausau and Virginia Surety contend they are not primary because their policies provide

that they are excess over:

> (1)    Any of the other insurance, whether primary, excess, contingent or
>        on any other basis:
>
> (a)    That is Fire, Extended Coverage, Builder's Risk,
>        Installation Risk or similar coverages for "your
>        work."

(App., Vol. 1 at W00071; VSC 0081.)  "Your work" is defined by the Wausau and Virginia

Surety Policies as: (a) "Work or operations performed by you on your behalf;" and (b) "Materials,

parts or equipment furnished in connection with such work or operations."  (App., Vol. 1 at

W0024, VSC 0085.)  The Policies also state that "your work" includes: (a) "Warranties or

representations made at any time with respect to fitness, quality, durability, performance or use of

'your work'" and (b) "The providing of or failure to provide warnings or instructions."  (*Id*. at

W00025, VSC0085.)  The Court finds that the Nutmeg Policy is not a policy covering "your

work" within the meaning of the Wausau and Virginia Surety Policies, and therefore, they are not excess over the Nutmeg Policy. In fact, none of the exceptions listed in the policies are present to make the Wausau and Virginia Surety coverage "excess" under the terms of Wausau Policy and the Virginia Surety Policy.

Texas courts follow the majority rule that when a dispute exists between the liability of an insurer with a policy that contains a "pro rata" other insurance clause and the liability of an insurer with a policy that contains an "excess clause," the "excess clause" is given full effect, making the policy with the "pro rata" clause liable to its limits.[4] *See Snyder v. Allstate Ins. Co.*, 485 S.W.2d 769, 770 (Tex. 1972); *Allstate Ins. Co. v. Universal Underwriters Ins. Co.*, 439 S.W.2d 385, 387 (Tex. Civ. App. – Houston [14th Dist.] 1969, no writ); *Canal Ins. Co. v. Gensco, Inc.*, 404 S.W.2d 908, 910 (Tex. Civ. App. – San Antonio 1966, no writ). In this case, the Wausau and Virginia Surety Policies are primary with "equal shares" and "pro rata" "other insurance clauses." The "other insurance" clause of the Nutmeg Policy provides that if any claim or wrongful act noticed to Nutmeg under its policy is insured by another valid policy or policies, then the Nutmeg Policy shall apply only in excess of the amount of any deductibles, retentions and limits of liability under such other policy or policies, whether the other policies are stated to be primary, contributory, excess, contingent or otherwise, unless they are written specifically excess of the Nutmeg Policy by reference to the Nutmeg Policy by policy number. Applying

---

[4] The Nutmeg Policy is not a "true excess policy" that results from an insured's purchasing one policy specifically as primary coverage and another specifically as excess coverage. *See, e.g. Utica Nat. Ins. Co. of Tex. v. Tex. Prop. & Cas. Ins. Guar. Ass'n*, 110 S.W.3d 450, 459-61 (Tex. App. – Austin, 2001) (rev'd in part on other grounds). Nevertheless, as previously stated, under the circumstances of this case Texas law provides that "excess clauses" are enforceable.

Texas law, Wausau and Virginia Surety owe AIMCO a duty to defend it in the Suggs action as its primary insurers, and Nutmeg's duty to defend is excess.

An excess carrier is only responsible for defense and settlement costs when the limits of the primary coverages are exhausted. *See Tex. Employers Ins. Ass'n v. Underwriting Members of Lloyds*, 836 F. Supp. 398, 407 (S.D. Tex. 1993) ("excess or umbrella carriers are responsible for defense costs only after exhaustion of the primary policy limits"); *Carrabba v. Employers Cas. Co.*, 742 S.W.2d 709, 715 (Tex. App. – Hous. [14th Dist.] 1987, no writ). Therefore, Nutmeg is not bound to pay any defense costs until the coverages under the Wausau Policy and the Virginia Surety Policy are exhausted.

Each of several insurers on concurrently triggered policies has a legal obligation to provide a full defense to the insured. *Tex. Prop. & Cas. Ins. Guar. Ass'n v. SW. Aggregates, Inc*. 982 S.W.2d 600, 605 (Tex. App. – Austin 1998, no pet.); *see also Keene Corp. v. INA*, 667 F.2d 1034, 1047-48 (D.C. Cir. 1981). When multiple policies apply to a loss, the "other insurance" provisions in insurance contracts determine how liability is to be apportioned between insurers, but this provision does not affect the relationship between the insurer and the insured. *Tex. Prop. & Cas.*, 982 S.W.2d at 606. The insurer has a duty to defend its insured, not a duty to provide a pro rata defense. *Id. See Utica*, 110 S.W.3d at 457. When a claim falls partially within and partially outside of a coverage period, the liability insurer's duty is to provide its insured with a complete defense; the contract obligates the insurer to defend its insured. *Tex. Prop. & Cas*., 982 S.W.2d at 606. Wausau contends the defense costs should be shared on a prorated basis, either according to policy limits or based upon the number of faxes sent during the policy periods. The policy limits under the Wausau Policy and the Virginia Surety Policy do not decrease with the

26

payment of defense costs. (App. at VSC0078 and W-00014.)  Wausau and Virginia Surety each

owe Nutmeg, as the subrogee of AIMCO, a complete defense.  Therefore, Wausau and Virginia

Surety are each liable to Nutmeg for the actual defense costs.

## Breach of Contract

A valid contract exists between AIMCO and Wausau and between AIMCO and Virginia

Surety, giving them the duty to defend AIMCO in the Suggs action.  AIMCO tendered

performance under the policies and Wausau and Virginia Surety breached their obligations under

the contracts by failing and refusing to defend AIMCO in the Suggs action.  Wausau and Virginia

Surety's duties to defend AIMCO arose before Nutmeg's obligation to pay defense costs was

triggered.  AIMCO suffered damages, namely the defense costs in the Suggs action.  Nutmeg is

subrogated to AIMCO's interests and is entitled to summary judgment against Wausau and

Virginia Surety on its claim for breach of contract.

## DAMAGES

## Pre-tender Defense Costs

An insurer's duty to defend an insured is only triggered by the actual service of process

upon its insured and its relay to the insurer.  *Travelers Indem. Co.  v. Citgo Petroleum Corp*., 166

F.3d 761, 768 (5th Cir. 1999) (citing *Members Ins. Co. v. Branscum*, 803 S.W.2d 462, 466-67

(Tex. App. – Dallas 1991, no writ.)).  A notice of suit provision notifies the insurer that the

insured has been served with process and that the insurer is expected to defend.  *Harwell v. State

Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995).  "Compliance with the notice of suit

provision is a 'condition precedent' to the insurer's liability on the policy." *Harwell*, 896 S.W.2d

at 173-174.  Nevertheless, if notice was not given according to the policy, the insurer does not escape liability, unless it was prejudiced because of the lack of notice. *Harwell,* 896 S.W.2d at 173-74; *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165-66 (1993).

Virginia Surety claims AIMCO did not notify it of its claim arising out of the Suggs action until October 2002, approximately fourteen months after the litigation commenced.[5]  Nutmeg claims the date of tender is unknown, but concedes the tender was no earlier than October 8, 2002.  (App., Vol. 2,  Nutmeg at 78-82.)  Virginia Surety contends it is not liable for the pre-tender fees and costs incurred in defending the Suggs action.  The limitation on the duty to defend is based in part on the voluntary payment provisions contained in insurance contracts.  The Virginia Surety Policy provides:

> No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

(App., Vol. 1 at VSC 0081, ¶ IV(2)(d).)  Nutmeg and Wausau argue that Virginia Surety has not shown that it was prejudiced by the late tender, and therefore, Virginia Surety is liable for the pre-tender costs of defense.

Texas courts have found that an insurer was prejudiced from lack of notice by its insured when (1) the insurer, without notice or actual knowledge of the suit, received notice after the

---

[5]  Virginia Surety also contends that AIMCO served it with the Third Amended Petition in the Suggs action although the Suggs had filed a Fourth Amended Petition.  Virginia Surety complains that it was never served with a "live petition."  The Court finds that the service of the Third Amended Petition was sufficient to put Virginia Surety on notice of the claim and permit it to investigate its duty to defend.  Its refusal to defend waived any right to notice of subsequent developments in the case. Moreover, it has not shown that it was prejudiced by AIMCO's failure to serve it with the latest amended petition.

entry of a default judgment against the insured; (2) the insurer received notice of the suit, but the trial date was fast approaching, thereby depriving it of an opportunity to investigate the claims or mount an adequate defense; (3) the insurer received notice of a lawsuit after the case had proceeded to trial and judgment has been entered against the insured; and (4) the insurer received notice of a default judgment against its insured after the judgment had become final and could not be appealed.  *See Harwell*, 896 S.W.2d at 175; *Cruz,* 883 S.W.2d at 166 n 4 (citing examples of the required prejudice).

Moreover, an insurer that breaches its duty to defend cannot enforce against the insured any conditions precedent in the policy; the insured is no longer constrained by "no action" or "no voluntary assumption of liability" clauses.  *Enserch Corp. v. Shand Morcham & Co., Inc.*, 952 F.2d 1485, 1496 n. 17; *Gulf Ins. Co. v. Parker Prods., Inc.,* 498 S.W.2d 676, 679 (Tex. 1973); *St. Paul Ins. Co. v. Rahn,* 641 S.W.2d 276, 278 (Tex. App. – Corpus Christi 1982, no writ); *First Nat'l Indem. Co. v. Mercado,* 511 S.W.2d 354, 357-58 (Tex. App. – Austin 1974, no writ).

Virginia Surety has not proven that it was prejudiced by the late notice of AIMCO's failure to serve it with the latest petition.  When it did receive notice, it did not defend, contribute to the defense costs, or participate in any decisions regarding the defense.  Moreover, it's failure to defend is a material breach of the policy which bars it from enforcing the notice and voluntary payments provision.  Additionally, the Court finds that Wausau was notified within a reasonable time of the commencement of the Suggs action and that any delay was *de minimis*.  Accordingly, both Virginia Surety and Wausau owed AIMCO a full defense.

## **Amount of Damages**

Both Wausau and Virginia Surety object to the Court's determining the defense costs for

the Suggs action based entirely on the affidavit of an insurance adjuster who cannot testify to what reasonable attorney fees would be in Texas for defending such an action.  The amount of reasonable attorneys fees in Texas for defending the Suggs action is not the proper measure of damages.  Nutmeg's damages are the actual defense costs in the underlying lawsuit.  *See Md. Ins. Co. v. Head Indus. Coatings and Servs., Inc*., 938 S.W.2d 27, 29 (Tex. 1996).  The parties do not dispute that $918,735 is the actual amount that was paid to defend the Suggs action.  An insurer loses its right to control an insured's defense by initially breaching the duty to defend.  *See Witt v. Universal Auto. Ins. Co*., 116 S.W.2d 1094, 1098 (Tex. App.–Waco 1938, writ dism'd.).  The Court finds that by not participating in the defense, Wausau and Virginia Surety gave up the right to control the defense costs.  Accordingly, Wausau and Virginia Surety are each liable to Nutmeg for the $918,735 that Nutmeg, as AIMCO's subrogee, paid to defend the Suggs action.

### The Cross-Claims of Wausau and Virginia Surety

Nutmeg is not required to contribute to the defense costs.  Therefore, the Court will look to the Other Insurance Clauses of Wausau and Virginia Surety to determine their obligations to each other.  Both of the policies provide as follows with respect to the Method of Sharing:

> If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

(App., Vol. 1 at W00018-19, VSC0081.)  The wording is broad enough to include defense costs.  Therefore, the Court finds that the equal share provision is applicable to the defense costs because both the Wausau and Virginia Surety Policies permit contribution by equal shares.  In light of this clause, the pro rata clause is inapplicable.  There is no legal basis for prorating the defense costs

30

based upon the limits of liability or upon the number of faxes sent by AIMCO.  Therefore, Wausau and Virginia are each entitled to contribution from each other for one-half of the defense costs in accordance with the equal share provisions of their policies.

## Conclusion

Wausau and Virginia Surety have a primary duty to defend AIMCO under the "advertising injury" provisions of the Wausau and the Virginia Surety Policies.  Nutmeg's duty to defend is triggered only after the limits of those two policies have been exhausted.  The policies will not be exhausted because the policy limits in the Wausau and Virginia Surety Policies do not decrease with the payment of defense costs.  Accordingly, Wausau and Virginia Surety have an obligation to defend and thus to pay all of the actual defense costs for Suggs action.  Wausau and Virginia Surety wrongfully have failed to provide a defense or pay AIMCO's defense costs incurred in the Suggs action.  As a result of Wausau and Virginia Surety's breach of the insurance contract, Nutmeg had to defend AIMCO in the Suggs action and paid a debt of AIMCO for which Wausau and Virginia Surety are primarily liable.  Nutmeg is equitably subrogated to AIMCO's rights under the Wausau Policy and the Virginia Surety Policy.  Wausau and Virginia Surety are jointly and severally liable to Nutmeg for defense costs for defending the Suggs action in the amount of $918,735.  As between Wausau and Virginia Surety, each is entitled to contribution from the other for one-half of the defense costs.

Nutmeg contends that it is entitled to its reasonable and necessary attorney fees in this action.  Additionally, Nutmeg has requested pre-judgment interest in an amount to be determined and post-judgment interest at the legal rate.

Nutmeg shall file, within thirty days of the date of the order, a motion which includes (1)

31

the amount of prejudgment interest it is claiming, and (3) its motion for attorney fees, including, *inter alia*, the legal authority for its claim to attorney fees and a properly supported submission of its attorney fees.  Any objections shall be filed within twenty days of Nutmeg's motion.

For the forgoing reasons, Nutmeg's Motion for Summary Judgment against Wausau and Virginia Surety is GRANTED.  Wausau's Motion for Summary Judgment against Nutmeg is DENIED.  Virginia Surety's Motion for Summary Judgment against Nutmeg is DENIED. Wausau and Virginia Surety's motions for judgment against each other are granted in part and denied in part to the extent that each is liable to the other for one-half of the defense costs.

SIGNED February 24, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE